Commonwealth *v.* Eason.

COMMONWEALTH *vs.* JOHN EASON.

Essex. February 6, 1998. - June 5, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, & MARSHALL, JJ.

*Practice, Criminal,* Hearsay. *Evidence,* Hearsay, Verbal completeness. *Eavesdropping. Search and Seizure,* Electronic surveillance. *Constitutional Law,* Search and seizure, Privacy. *Privacy.*

At a criminal trial, the judge's error in allowing inadmissible hearsay testimony was reversible error, where credibility was the sole issue and the improperly admitted testimony weakened the defendant's case. [597-598]

This court stated that any expectation of privacy in a telephone conversation is not objectively reasonable, because a person is not reasonably entitled to assume that no one is listening in on an extension telephone; consequently, at the retrial of an indictment, testimony of police officers, concerning telephone conversations they monitored on a telephone extension without a warrant but with the consent of a party who telephoned the defendant at the officers' request, will be admissible in evidence. [598-601] FRIED, J., concurring. MARSHALL, J., concurring in part and dissenting in part, expressed the opinion that a search warrant should have been required in the circumstances.

INDICTMENTS found and returned in the Superior Court Department on May 11, 1994.

A motion to suppress evidence was heard by *Patrick F. Brady,* J., and the cases were tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert J. Bender,* Assistant District Attorney (*David Dunbar Livingston,* Assistant District Attorney, with him) for the Commonwealth.

*Paul J. Molloy* for the defendant.

*Scott Harshbarger,* Attorney General, & *Susanne G. Levsen,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

WILKINS, C.J. We have before us, on further appellate review (*Commonwealth* v. *Eason,* 43 Mass. App. Ct. 114 [1997]), the defendant's appeal from his convictions of various crimes that

he allegedly committed on January 1, 1993, during an invasion of the apartment of George Allison in Haverhill. At that time Massachusetts, New Hampshire, and Federal law enforcement authorities were investigating illegal narcotics activities in New Hampshire and the Haverhill area. Law enforcement officers believed that the home invasion may have been related to their narcotics investigation.

On April 13, 1993, Massachusetts State Trooper Thomas Coffey and New Hampshire State Trooper Robert Quinn visited a woman named Rita Disorbo in response to information that Quinn had received from a cooperating prisoner named Lee Zahler. Zahler had told Quinn that Disorbo knew who had committed the Allison home invasion. The troopers persuaded Disorbo to make two calls to the defendant at his home. Without the defendant's knowledge, but with Disorbo's consent, the troopers listened to these calls on an extension telephone. They testified at trial to admissions that they heard the defendant make during those telephone conversations.

The Appeals Court summarized the evidence at trial. "[T]he only witnesses were Allison, who described the incident but was unable to identify the participants, Rita Disorbo, her husband Paul Chambers, whom she had married subsequent to the April eavesdropping, and the two troopers. Chambers, Disorbo's then boyfriend, had been incarcerated from September 1992 until March 15, 1993. While Chambers was in jail, Disorbo had a relationship with the defendant. It ended after Chambers was released, at which time the defendant moved out of Disorbo's apartment. Both Disorbo and Chambers testified that the defendant had admitted to them that he had participated in the invasion . . . . Disorbo and Chambers also stated that the defendant had offered them money not to testify against him. The two troopers related the conversations they had overheard in Disorbo's apartment, in much greater detail than Disorbo's account" of the telephone conversations. *Commonwealth* v. *Eason, supra* at 117.

The Appeals Court had no difficulty in concluding that the troopers did not violate the Massachusetts wiretap law (G. L. c. 272, § 99) when they listened to the telephone conversations. *Id.* at 119-120. The Appeals Court divided, however, on the question whether the troopers had violated the defendant's rights under art. 14 of the Massachusetts Declaration of Rights by listening in on the telephone conversations without first obtain-

ing a warrant. *Id.* at 125. *Id.* at 129 (Jacobs, J., dissenting). *Id.* at 131 (Armstrong, J., dissenting). A majority of that court concluded that they had, that their testimony concerning the telephone conversations should not have been admitted in evidence, and that the error required reversal of the convictions and a new trial. *Id.* at 125-126. We granted the Commonwealth's application for further appellate review.

We shall discuss the constitutional question that divided the Appeals Court because it will arise at the retrial we conclude is required. We shall, however, first consider another of the defendant's challenges to the admission of evidence, one that is not constitutionally based but is well founded.

1. The defendant contends that, over his objection, prejudicial hearsay evidence was admitted against him. On direct examination, Trooper Quinn testified that, in the days before they overheard the telephone conversations between Disorbo and the defendant, Trooper Coffey and he had been investigating the suspected illegal drug activity of Lee Zahler. On cross-examination, Quinn testified that he and Coffey had spoken with Disorbo because of information that Zahler had provided to him. Quinn then testified, without objection, that Zahler told him that Paul Chambers had said that Disorbo had information on the home invasion and that Quinn and Coffey should interview her.

On redirect examination, the prosecutor asked Quinn, "What was Lee Zahler's information that led you to Disorbo's address." The defendant objected, and the judge held an extensive sidebar conference during which he considered more than just the objection. The judge ruled, over objection on hearsay and other grounds, that Quinn could testify to the information that he had received from Zahler, including Zahler's statement that he was not involved, directly or indirectly, in the home invasion.

Quinn then testified, as he had before, that Zahler had said that, if the police wanted to know who had committed the crimes, they should talk to Disorbo because she knew. In response to another question, Quinn added, consistent with what the judge had authorized at the sidebar conference over objec-

tion, that Zahler said that he was not involved in the crimes, himself or through anyone else.[1]

It was the defendant's theory that Zahler's confederates had invaded Allison's apartment in retaliation for some perceived wrong. Because the case against the defendant depended on the credibility of the prosecution's witnesses (there was no inculpatory physical evidence), admission, over objection, of evidence of Zahler's denial to Quinn of his participation in the crimes weakened the defendant's case and, if improper, was reversible error.

The Commonwealth rightly makes no attempt to defend under a hearsay exception the admission of Quinn's testimony of what Chambers told Zahler. Rather, it argues that the defendant opened the door to this subject, thereby justifying admission of the entire conversation. The Commonwealth asserts that the doctrine of verbal completeness justifies admission of all that Zahler said during the same conversation on the same subject. See *Commonwealth* v. *Watson*, 377 Mass. 814, 825-831 (1979).[2]

What Chambers told Zahler is a matter quite apart from the later self-serving statements made to Quinn denying any involvement in the home invasion. That Zahler made the two statements in the course of the same conversation does not make the second admissible. Verbal completeness at best allows full disclosure of an entire conversation on the same subject. Zahler's protestation of innocence was not part of Chambers's conversation with Zahler, nor did it concern a subject on which Quinn had been cross-examined. See *id.* at 828; *Commonwealth* v. *Henry*, 37 Mass. App. Ct. 429, 432 (1994) (statement of innocence not admissible although part of defendant's admissible statement). The hearsay statement concerning Zahler's assertion of innocence should not have been admitted, and its admission was reversible error.

2. Because there must be a retrial, we state our views on the admissibility of the troopers' recitation of the conversations

---

[1]This latter testimony was given in response to a question that called for a yes or no answer. The defendant's motion to strike was denied.

[2]Because of its view of the appellate issues, the Appeals Court did not have to reach this question in order to dispose of the appeal, but commented with respect to the retrial "that the hearsay statements of a prisoner who was incarcerated with Paul Chambers claiming that he was not involved in the home invasion should not be admitted." *Commonwealth* v. *Eason*, 43 Mass. App. Ct. 114, 126 n.14 (1997).

they overheard on Disorbo's extension telephone. The Appeals Court was divided on the question whether the defendant's rights under art. 14 of the Massachusetts Declaration of Rights were violated by the officers' actions.[3]

Constitutional provisions against unreasonable searches and seizures were adopted in large measure as a protection against warrantless intrusions into homes. See *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 (1989); *Commonwealth* v. *Blood*, 400 Mass. 61, 71 (1987); *Commonwealth* v. *Forde*, 367 Mass. 798, 804-805 (1975). The question before us concerning the propriety of the warrantless seizure of evidence is the same under the Fourth Amendment to the United States Constitution as it is under art. 14: whether the defendant had a subjective expectation of privacy in the object of the challenged search that society is willing to recognize as reasonable. See *California* v. *Ciraolo*, 476 U.S. 207, 211 (1986); *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991); *Commonwealth* v. *Panetti*, *supra* at 231-232.

The answer, however, may not be the same under the two Constitutions. In *Commonwealth* v. *Panetti*, *supra*, we held that, without regard to the Fourth Amendment's requirements, art. 14 protected the defendant's reasonable expectation that there would be no warrantless eavesdropping on his conversations from a crawl space under his first-floor apartment. *Id.* at 234-235. In *Commonwealth* v. *Blood*, *supra* at 61, we dealt with an art. 14 challenge to the admissibility of statements obtained by means of a concealed transmitter worn by a cooperating confederate of the defendant during meetings in private homes. This kind of warrantless electronic surveillance of conversations with the consent of just one of the parties does not violate the Constitution of the United States. See *United States* v. *Caceres*, 440 U.S. 741, 750-751 (1979); *United States* v. *White*, 401 U.S. 745, 751 (1971); *Commonwealth* v. *Thorpe*, 384 Mass. 271, 282 (1981), cert. denied, 454 U.S. 1147 (1982); *Commonwealth* v. *Douglas*, 354 Mass. 212, 221-222 (1968), cert. denied, 394 U.S. 960 (1969). In the *Blood* case, however, we stated that it was "objectively reasonable to expect that conversational interchange in a private home will not be invaded surreptitiously by warrantless electronic transmission or recording" and that

---

[3]The Appeals Court correctly ruled that the interception of the telephone conversations did not violate G. L. c. 272, § 99. *Commonwealth* v. *Eason*, *supra* at 119-120.

consent to the transmission or recording by one party to such a conversation did not obviate the need for a warrant. *Commonwealth* v. *Blood, supra* at 70. Thus, we held that undisclosed electronic surveillance of a conversation in a private home with the aid of an informant violated art. 14 and any tapes or testimony derived from that surveillance or from any transmission were inadmissible. *Id.* at 74. *Commonwealth* v. *Fini*, 403 Mass. 567, 568 (1988). The case before us does not involve the undisclosed use of electronic equipment to transmit a conversation occurring entirely in a private home.

The Appeals Court concluded that our opinions strongly suggest that "the warrantless police initiation and monitoring . . . of the two telephone calls in this case, unbeknownst to the defendant, was not permissible under art. 14." *Commonwealth* v. *Eason, supra* at 121. The court viewed the police actions in listening to the conversations on an extension telephone as serious governmental intrusions "contrary to the expectation of privacy which Massachusetts is prepared to recognize." *Id.* at 124. The dissent relied on what it saw as a meaningful difference between the surreptitious transmission of a conversation in a private home and eavesdropping on an extension telephone. *Id.* at 126, 127 (Jacobs, J., dissenting).

The defendant knew, when speaking on the telephone, that his words were being transmitted electronically beyond his home. Unlike the defendant in the *Blood* case, he had no reason to assume that the conversation would not be heard by a third party. A person cannot control the conditions at the other end of a telephone conversation. Extension telephones are very common. Cordless and cellular phones are making the confidentiality of telephone conversations increasingly uncertain. Any expectation of privacy in a telephone conversation is not objectively reasonable, because a person is not reasonably entitled to assume that no one is listening in on an extension telephone. "A defendant who speaks incriminating words over the telephone runs the risk . . . that the conversation . . . may be overheard on an extension telephone." *Commonwealth* v. *Douglas, supra* at 221. See *Rathbun* v. *United States*, 355 U.S. 107, 111 (1957).[4]

The testimony of the troopers concerning the overheard

---

[4] We have taken a similar view concerning words spoken in a private home but overheard in a place where the speaker reasonably should have expected that someone might be. Thus, when a police officer, standing in a hallway that

telephone conversations will be admissible at retrial. What we have said does not apply to recordings that the officers made of those conversations. If it should develop that a trooper relied on a recording in presenting his testimony, a separate issue would arise on which we intimate no view.

4. The judgments are reversed and the verdicts set aside.

*So ordered.*

FRIED, J. (concurring). I agree with the court's decision not to extend *Commonwealth* v. *Blood*, 400 Mass. 61 (1987), to these circumstances, because I consider *Blood* to have been wrongly decided. But I will not depart from *Blood* until convinced that it has been unduly constraining in practice. It should take more than simple disagreement to justify a new member of the court in departing from an established precedent.

MARSHALL, J. (concurring in part, dissenting in part). Until today, this court steadfastly has resisted the proposition that loss of privacy is inevitable in modern society and must be accepted. *Commonwealth* v. *Blood*, 400 Mass. 61 (1987). *Commonwealth* v. *Thorpe*, 384 Mass. 271, 275 (1981), cert. denied, 454 U.S. 1147 (1982). Now we are told that "[a]ny expectation of privacy in a telephone conversation is not objectively reasonable, because a person is not reasonably entitled to assume that no one is listening in on an extension telephone." *Ante* at 600.

The defendant in this case received at his home two telephone calls from a friend. Part 2 of the court's opinion concludes that it was unreasonable for the defendant "to assume that the conversation would not be heard by a third party." He should have considered the possibility that the friend made the calls at

the public could freely enter, overheard statements made in an apartment off this hallway, he did not violate the defendant's Fourth Amendment rights. *Commonwealth* v. *Dinnall*, 366 Mass. 165, 166-168 (1974). Cf. *Commonwealth* v. *Panetti*, 406 Mass. 230, 233 (1989) ("a person would have no justified expectation of privacy in conversations that can be heard by the unaided ear of an eavesdropper lawfully in a contiguous apartment"). Where, however, a hallway was in the exclusive control of the defendant, he had a justified expectation of privacy, and, therefore, police in the hallway eavesdropping on a conversation in an apartment violated the defendant's Fourth Amendment rights. *Commonwealth* v. *Hall*, 366 Mass. 790, 795 (1985).

the urging of the police and that police officers were secretly monitoring and recording the conversations on an extension telephone. In other words, the citizens of this Commonwealth are now on notice that when a friend telephones, police officers may be listening — and it is unreasonable for them to assume otherwise. Sophisticated electronic surveillance, intruding in all spheres previously understood to be protected, is a reality of our society; it is not only telephone equipment, whether grounded, cordless, or cellular, that makes the confidentiality of our private conversations increasingly uncertain. We may no longer have any "objectively reasonable" expectation that a friend or neighbor, or a passerby for that matter, may not be eavesdropping on our most intimate conversations in our homes. Must we also assume from this that police officers may be listening, perhaps with the connivance of a friend, and that anything we say may be used by the State against us?

The interest this court sought to protect in *Blood* is "the expectation of the ordinary citizen, who has never engaged in illegal conduct in his life, that he may carry on his private discourse freely, openly, and spontaneously without measuring his every word against the connotations it might carry when instantaneously heard by others unknown to him and unfamiliar with his situation or analyzed in a cold, formal record played days, months, or years after the conversation." *United States* v. *White*, 401 U.S. 745, 790 (1971) (Harlan, J., dissenting). The decision today undermines this "sense of security" in dealing with one another, *Thorpe, supra* at 285, that citizens of this Commonwealth may rightly expect. The real issue here is whether police officers must obtain a search warrant before engaging in this kind of surreptitious eavesdropping in private homes. It is not a great burden for them to do so, and it makes a great difference in preserving the security of the private conversations of all citizens. I would require a search warrant before police officers may engage in this most intrusive practice.

I respectfully dissent from part 2 of the court's opinion.