**[J-20-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 18 WAP 2013 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered February 27, 2013 at No. |
| | : | 1046 WDA 2012, affirming the Order of |
| v. | : | the Court of Common Pleas of Mercer |
| | : | County entered June 8, 2012 at No. CP- |
| | : | 43-CR-0001291-2011. |
| GERALD M. DUNNAVANT, | : | |
| | : | |
| Appellee | : | ARGUED:  April 8, 2014 |

**OPINION IN SUPPORT OF AFFIRMANCE**

**MR. JUSTICE SAYLOR**                              **DECIDED: DECEMBER 29, 2014**

We would affirm the Superior Court's order, as we would find that, under this Court's precedent, Appellee was entitled to suppression of the videotape surreptitiously created within his home.

In our view, the decision by this Court that bears most directly on the present case is Commonwealth v. Brion, 539 Pa. 256, 652 A.2d 287 (1994), which granted suppression where a confidential informant secretly audiotaped the events inside the defendant's home.[1]  The Justices favoring reversal interpret Brion as emphasizing the impermissibility of intentional police conduct in sending a confidential informant into a suspect's home to record events that transpire inside.  See Opinion in Support of

---

[1] We agree with the Justices favoring reversal that the use of videotape is "obviously analogous" to the use of audiotape for present purposes.  Opinion in Support of Reversal, slip op. at 17.

Reversal, slip op. at 31. Although the Brion Court highlighted such conduct, the decision's central holding was predicated on the distinction between the privacy inherent in one's home and the lack of privacy attendant to locations outside the home. Indeed, it is on this basis that the Court distinguished prior decisions, explaining:

> Unlike both [Commonwealth v. Blystone, 519 Pa. 450, 549 A.2d 81 (1988)] and [Commonwealth v. Henlen, 522 Pa. 514, 564 A.2d 905 (1989)], the instant case involves conversations taking place in the sanctity of one's home. If nowhere else, an individual must feel secure in his ability to hold a private conversation within the four walls of his home. For the right to privacy to mean anything, it must guarantee privacy to an individual in his own home. As then-Justice Roberts stated in Commonwealth v. Shaw, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978): "Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." (Citations omitted.)

Brion, 539 A.2d at 260, 652 A.2d at 289 (footnote omitted).

The opinion supporting reversal distinguishes the present dispute from Brion on the basis that, here, the confidential informant was not sent by the police into the home, but instead was unexpectedly invited into the home. It concludes that Appellee therefore "did not close the door to the outside world," because "the [confidential informant] and the hidden camera made their way . . . into the home only as a result of appellee's invitation." Opinion in Support of Reversal, slip op. at 32. The opinion supporting reversal indicates that this "makes all the constitutional difference." Id. at 31.

We would note, however, that, in Brion, there is no suggestion that the informant entered the residence against the will of its occupant. Thus, in that matter it may equally be said that the defendant did not close the door to the outside world, and that the informant and the recording device made their way into the residence as a result of the occupant's wish to sell drugs to the informant. Hence, a present holding that suppression is not required, when read in conjunction with Brion, would signify that the

determining factor of constitutional significance is, in effect, whether the officers involved in setting up a controlled drug purchase subjectively intend that the transaction should occur inside or outside the suspect's home.

In our view, such subjective intentions on the part of the authorities are of little relevance to the constitutional analysis. Of more relevance is the occupant's expectation of privacy in his home (along with society's recognition of the reasonableness of that expectation), and the fact that the confidential informant physically entered the home to secretly videotape the transaction. See Brion, 539 Pa. at 262, 652 A.2d at 289; Commonwealth v. Rekasie, 566 Pa. 85, 101, 778 A.2d 624, 634 (2001) (Castille, J., concurring, joined by Saylor, J.) (agreeing that a police wiretap did not violate Article I, Section 8, because "unlike Brion, the recording/seizure of the oral statements did not result from the physical entry of a government agent into the defendant's home"). In this regard, we believe that failure to require suppression in the present circumstances would establish what is tantamount to a good-faith exception to Brion's holding, whereas this Court has generally found that that, due to the primacy of the privacy interests it protects, Article I, Section 8 does not encompass exceptions based on the good faith of the police. See, e.g., Commonwealth v. Edmunds, 526 Pa. 374, 586 A.2d 887 (1991).

Accordingly, we would conclude that, unless and until Brion is overruled, individuals in Appellee's position are entitled to suppression of secretly-made video recordings capturing events transpiring within the confines of their home, regardless of whether the police originally expected and/or intended that those events would occur outside the residence.

Mr. Justice Baer and Madame Justice Todd join this opinion in support of affirmance.