COMMONWEALTH of Pennsylvania, Appellant,

v.

David DARUSH, Appellee.

Superior Court of Pennsylvania.

Argued March 23, 1999.

Filed Sept. 27, 1999.

Reargument Denied Dec. 3, 1999.

Mary B. Seiverling, Deputy Atty. Gen., Harrisburg, for the Com., appellant.

Paul D. Boas, Pittsburgh, for appellee.

Before DEL SOLE, JOYCE and BECK, JJ.

DEL SOLE, J.:

¶ 1 Today we consider whether the rulings of *Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287 (1994) and *Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987), *aff'd*, 539 Pa. 272, 652 A.2d 294 (1994) apply to require a warrant where a consenting law enforcement officer telephones an individual at home and records that conversation. We hold that a warrant is required in this situation and therefore affirm the suppression order.

¶ 2 Appellee, David Darush, was charged with two counts of delivery of marijuana, two counts of possession with intent to deliver and criminal conspiracy. Thereafter Darush filed an omnibus pretrial motion and hearings were held. The court ultimately granted Darush's motion suppressing taped conversations held between Darush and undercover agent Scott Merrill.

¶ 3 On July 22, 1994, after an investigation of Darush, Agent Merrill signed a written consent to the recording of conversations with Darush and received the approval of Deputy Attorney General Madeira. The matter, however, was not presented to a neutral judicial authority for a prior determination of probable cause. The agent thereafter on August 8, 1994, telephoned Darush at his home and the conversation was recorded. During their brief conversation Darush asked the agent to contact him at his "shop" in approximately twenty minutes, and then provided the agent with the telephone number for that location. That same evening the agent placed a call to the number provided

and the agent's conversation with Darush was again recorded.

■ ¶4 In considering the merits of the suppression motion the suppression court ruled that under the law of *Brion*, and *Schaeffer*, prior judicial approval is required before the words of a defendant can be seized when he speaks them in his home. The court held that under "current caselaw," absent prior judicial approval, Darush's rights as against unreasonable searches and seizures were violated by the taping of his conversation in his home, regardless of the agent's consent to the recording. We agree.[1]

¶5 In *Brion*, our Supreme Court held that Article I, Section 8 of the Pennsylvania Constitution precludes the police from sending a confidential informant wearing a consensual body wire into an individual's home to electronically record their conversations and transmit them to law enforcement officers. The Court ruled that although 18 Pa.C.S.A. § 5704(2)(ii) allows for the interception of communications where one party has consented, when applied to the interception of oral communications occurring within one's home, this provision can be considered constitutionally valid only if a neutral judicial authority makes a prior determination of probable cause. The Court reasoned that the sanctity of one's home demands constitutional protection from any violations occurring through the use of electronic surveillance. The Court remarked: "[f]or the right to privacy to mean anything, it must guarantee privacy to an individual in his own home." *Brion*, 652 A.2d at 289. Because the conversations took place in Brion's home and because there was no determination of probable cause by a neutral judicial authority, the court held that the consensual body wire violated Article I, Section 8,

which required suppression of the tape recorded conversation. The Court stated that its decision was "in accordance with the analysis articulated by Judge Cirillo in *Schaeffer I.*" *Id.* (citing *Schaeffer*, 536 A.2d at 368–72.)

¶6 This court in *Schaeffer* (*Schaeffer I*), ruled that the privacy protection offered by the Pennsylvania Constitution was violated where absent the issuance of a warrant based upon probable cause, an individual's conversation was recorded in his home by a confidential informer who agreed to wear a body wire. This decision was affirmed by the Supreme Court in *Commonwealth v. Schaeffer.*[2] The Superior Court's decision focused on an individual's legitimate expectation of privacy. We stated:

> Every speaker knows and accepts as a "condition of human society" that his listener may go to the police, but he does not intend by speaking to give up the right to exclude the police from his home. But if the police are simultaneously recording every word, they are already there, in the home, uninvited, contrary to every reasonable expectation that most people in society still have.

*Schaeffer I*, 536 A.2d at 365.

¶7 In the instant case a recorded telephone call was placed by a consenting undercover agent to Darush at his home. Darush spoke on a telephone in his home to the agent. Under the holdings of *Brion* and *Schaeffer*, Darush's right to privacy under the Pennsylvania constitution was violated by this action. The statement made in *Schaeffer I* recognizing a person's right to privacy in one's home is equally applicable here:

> In the place where Schaeffer spoke, he had, if anything, an even greater expec-

1. We note that pursuant to the Supreme Court's most recent decision in *Commonwealth v. Ardestani*, 558 Pa. 191, 736 A.2d 552, 1999 Pa. Lexis 1872 (1999) the rule of *Brion*, supra, applies to all cases on direct appeal where the issue In question was prop-

erly preserved at all stages of the adjudication. Because this question has been properly preserved, we proceed to consider it here.

2. *Commonwealth v. Schaeffer*, 539 Pa. 271, 652 A.2d 294 (1994).

tation that his words would not be "broadcast to the world," because he spoke in his home; and as our state high court has justly said, "Upon the closing the door of one's home to the outside world, a person may legitimately expect *the highest degree of privacy known to our society.*"

*Id.* 536 A.2d at 354 (citing *Commonwealth v. Shaw,* 476 Pa. 543, 383 A.2d 496, 499 (1978).)

¶ 8   The Commonwealth suggests that Darush reduced his expectation of privacy by engaging in a conversation which was transmitted by telephone from his home. It asserts that the protected zone of privacy applies only where both parties are in the home and the conversation occurs between the defendant and a consenting wired informant. Neither *Brion* nor *Schaeffer* allows for this conclusion.

¶ 9   In *Schaeffer I,* the court referred to the privacy recognized by one placing a phone call from a closed phone booth and analogized it to the privacy enjoyed in one's home. The court cited to the following passage from the United States Supreme Court's decision in *Katz v. United States* :

> One who occupies [a telephone booth], shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece *will not be broadcast to the world.*

*Schaeffer I,* 536 A.2d at 369 (citing *Katz v. United States,* 389 U.S. 347, 352, 88 S.Ct. 507, 511–12, 19 L.Ed.2d 576 (1967).) Likewise, one who sits in the privacy of his home and converses with another, whether in person or by telephone, has an expectation that the government will not electronically monitor the conversation. Of concern is the privacy interest of the individual, not the means by which that individual's conversation is recorded.

¶ 10   By referencing *Katz,* the *Schaeffer I* court recognized that a legitimate expectation of privacy is not destroyed by one who chooses to converse by telephone. It relied on the *Katz* decision in reaching the conclusion that Schaeffer's privacy was not diminished by engaging in conversion with another, who could later repeat what was said:

> The caller in *Katz,* no differently from . . . this case, necessarily bore the risk that the person he spoke to would report what he said. Why, then since the words were subject to oral repetition, did in the Court in *Katz* consider it an invasion of a protected sphere of privacy for the government to simultaneously seize the words without a warrant based on probable cause? The answer is that Katz, just like Schaeffer, spoke in circumstances justifying his belief that he could exclude "the uninvited ear" and that the limited risk of oral betrayal "inherent in the conditions of human society;" did not destroy the separate, legitimate expectation that the police could not directly seize the words of his conversation by electronic means without a warrant based on probable cause.

*Schaeffer I,* 536 A.2d at 369 (internal citation omitted.)

¶ 11   Further reference to the recording of telephonic communications was made in *Schaeffer I* with its reliance on *Commonwealth v. Beauford,* 327 Pa.Super. 253, 475 A.2d 783 (1984), *appeal dismissed,* 508 Pa. 319, 496 A.2d 1143 (1985). When discussing this Commonwealth's recognition of a high standard of protection from electronic surveillance under the Pennsylvania Constitution, *Schaeffer I* noted we held in *Beauford* that Article I, Section 8 prohibits the warrantless installation of a pen register on a telephone line to record the destination, time and length of outgoing calls. *Schaeffer I* also remarked that *Beauford* "relied on the great caution with which this State has always regarded intrusions on privacy accomplished through electronic surveillance." *Schaeffer I,* 536 A.2d at 363 (citing *Beauford* at 475 A.2d 790–91).

¶ 12 Additionally, *Brion* provides no basis for a distinction between the recording of words spoken in one's home directly to a person wearing a body wire, and those spoken from one's home over a telephone to a person who has consented to the recording of the conversation. Rather, *Brion* suggests the opposite. The court stated "we hold that an individual can reasonably expect that his right to privacy will not be violated in his home through the use of **any** electronic surveillance." *Brion*, 652 A.2d at 289 (emphasis added.)

¶ 13 Thus, we conclude under the dictates of *Brion* and *Schaeffer*, that regardless of whether the intercept occurs by one wearing a body wire into the home or by one phoning into the home and consenting to the simultaneous recording the conversation, a legitimate expectation of privacy enjoyed in one's home is violated in either instance. Absent the issuance of a warrant, such monitoring is prohibited.[3] Accordingly, the trial court in this case properly suppressed the conversations recorded by the agent when telephoning Darush at home.

¶ 14 The trial court went on to also suppress the recording of a subsequent conversation between Darush and the agent which occurred when the agent telephoned Darush at his shop as Darush requested in their initial conversation. Because the trial court properly determined that these conversations occurred only as a result of the initial illegal seizure, the second conversation must be suppressed as fruit of the initial seizure. *Commonwealth v. Spence*, 428 Pa.Super. 548, 631 A.2d 666 (1993). There was no independent source for the second conversation as the Commonwealth suggests. This doctrine applies only where the information is obtained by those who are not directly involved with the tainted evidence through a source completely independent of the tainted source. *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996). Here the phone number was provided to the agent in the initial illegally recorded conversation. That same agent then used this information to place a telephone call to the number provided, which call was also recorded. The trial court was correct in ruling that this evidence must also be suppressed.

¶ 15 Under the rulings of *Brion* and *Schaeffer*, Darush was justified in expecting that the words he spoke from his home, even over the phone, would not be surreptitiously recorded. Because the law enforcement agency at work in this case violated this expectation of privacy by recording the conversations without a warrant, the trial court justifiably suppressed them.

¶ 16 Order affirmed.

---

3. The Commonwealth also presents an argument that *Brion* and *Schaeffer* do not apply because there was only a "wire communication" rather than an "oral communication" in this case. The Commonwealth cites to the following statement in *Brion* : "With respect to oral communications occurring within one's home, interception ...can only be deemed constitutional under Article I, § 8, if there has been a prior determination of probable cause by a neutral detached authority." *Brion*, 652 A.2d at 289. The Commonwealth's argument is without basis. Darush verbally spoke in his home into a telephone. His statements were audible and thus were an oral communication.