**COMMONWEALTH OF
PENNSYLVANIA,
Appellant,**

v.

**Jon Gregory BENDER, Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 2002.
Filed Oct. 25, 2002.
Reargument Denied Jan. 3, 2003.

Joseph M. George, Assistant District Attorney, Uniontown, for Commonwealth, appellant.

Paul D. Boas, Pittsburgh, for appellee.

Before: DEL SOLE, P.J., GRACI, and MONTEMURO,* JJ.

OPINION BY GRACI, J.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 1 This is an appeal by the Commonwealth from an Opinion and Order entered in the Court of Common Pleas of Fayette County suppressing a tape-recorded conversation between Appellee, Jon Gregory Bender ("Bender"), and a confidential informant. We reverse.

¶ 2 At issue here is the admissibility of a tape-recorded conversation procured by the Pennsylvania State Police without a warrant. The informant, David Lint ("Lint"), notified police on May 17, 2001, that Bender had approached him about killing Bender's ex-girlfriend in exchange for $50,000. Lint was to meet with Bender on May 19, 2001, to discuss the details of the plan. Lint agreed to wear an audio recording device to the May 19 meeting and was further instructed by the police not to enter Bender's residence.

¶ 3 What transpired next is best summarized by the trial court:

Lint drove to [Bender]'s rural, two-and-one-half (2–1/2) acre property near the village of Banning, about six (6) miles outside of Dawson, Fayette County, and upon arrival observed [Bender] at his burn pile approximately fifteen (15) yards from the house, near a swing set and the edge of the woods. Lint testified that as he approached the burn pile [Bender] left the same and approached him as he stood in [Bender]'s yard. Lint then asked [Bender] if he was ready to go. [Bender] then went into his residence while Lint remained outside. Although [Bender] testified that Lint was on the porch, Lint stated that he was not but rather remained in the yard where he spoke to [Bender]'s mother while he waited for [Bender] to come back out. Even assuming that his testimony in this regard is credible, the record establishes that the typed transcript of the taped conversation at issue, provided to defense counsel by the District Attorney, sets forth statements made to [Bender] by his children who were in the house at the time and never observed outside by Lint.

Trial Court Opinion and Order, 11/30/01, at 1–2.[1]

¶ 4 The two men entered Lint's vehicle and, as the suppression court noted, the parties agree that more than ninety percent of the conversation occurred thereafter. N.T. Omnibus Pretrial Motion Proceedings, 11/27/01, at 34. During the course of the conversation in Lint's vehicle, Bender and Lint discussed the details of a plan whereby Lint would murder Bender's ex-girlfriend in exchange for a cash payment.

¶ 5 Bender was arrested and charged with solicitation to commit criminal homicide, 18 Pa.C.S.A. § 902/2501. On November 1, 2001, Bender filed an Omnibus Pre–

---

* Retired Justice assigned to Superior Court.

1. The suppression court continued: "The clear electronic transmission of the children's voices convinces the Court that, even if Lint was not standing on the porch, he was nevertheless close enough to the residence itself as to be within the curtilage where, under the circumstances of this case, [Bender] had a reasonable expectation of privacy. Although the parties agree that more than ninety percent (90%) of the taped conversation took place in Lint's vehicle, the record is not clear as to which, if any, incriminatory statements were made by [Bender] prior to entering the car." Trial Court Opinion and Order, 11/30/01, at 2 (footnote omitted).

Trial Motion to suppress the tape recording. The suppression court granted the motion following an evidentiary hearing. The Commonwealth filed a Notice of Appeal on December 21, 2001, certifying that the suppression court's order substantially handicapped its prosecution of Bender. The proceedings have been stayed pending resolution of the Commonwealth's appeal.

¶ 6 The Commonwealth raises the following issue for our review:

1. Whether the trial court erred in suppressing the tape recording since Bender had no expectation of privacy when he made the inculpatory statements?

## II. DISCUSSION

¶ 7 We note preliminarily that the Commonwealth has "an absolute right of appeal to the Superior Court to test the validity of a pre-trial suppression order." *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 387 (1985). Such an appeal "is proper as an appeal from a final order when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution." *Id.* at 386. The Commonwealth has complied with this procedural requirement and this appeal is properly before us.

¶ 8 In reviewing an appeal by the Commonwealth from an order suppressing evidence,

we consider only the evidence of the defendant's witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. We are bound by only those factual findings made by the suppression court which are supported by the record, and thereafter

must determine whether the legal conclusions and inferences drawn from those facts are legitimate. As a result, we may reverse only if the legal conclusions drawn from the factual findings are erroneous.

*Commonwealth v. Lechner*, 454 Pa.Super. 456, 685 A.2d 1014, 1015–1016 (1996) (citations omitted).

¶ 9 We first note that we are not bound by the suppression court's conclusion that "the record is not clear as to which, if any, incriminatory statements were made by [Bender] prior to entering the car," as that finding has no support in the record. *Lechner*, 685 A.2d at 1015. A contextual reading of the transcript of the intercepted conversation shows that nothing incriminating was said before the parties entered Lint's car. In fact, no words were exchanged between Lint and Bender until Bender exited his home and rejoined Lint somewhere between the home and Lint's vehicle. At that point Bender said "I'm goin'" to one of his children, Transcription of Interception, 5/19/01, at 3:24, and presumably the two men entered Lint's vehicle immediately thereafter. Regardless of the timing of the aforementioned series of events, approximately one page of the transcription passes before Bender makes any statements that could be regarded as inculpatory. *Id.* at 5:22–24.

¶ 10 We turn next to the legitimacy of the legal conclusions and inferences drawn by the suppression court from the facts. Crucial to the suppression court's decision was the presence of the children's voices in the recording. The court reasoned that in order to record the children, Lint must have entered the "curtilage" [2]

---

2. "Curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and privacies of life.'" *Commonwealth v. Oglialoro*, 525 Pa. 250, 579 A.2d 1288, 1292 (1990), citing *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214, 225 (1984). *Oglialoro* involved a defendant's expectation of privacy

surrounding Bender's residence. In the suppression court's view, this tainted the recording in its entirety and rendered it inadmissible. In reaching this conclusion, the suppression court relied upon two cases: *Commonwealth v. Darush*, 740 A.2d 722 (Pa.Super.1999) and *Commonwealth v. Myers*, 450 Pa.Super. 482, 676 A.2d 662 (1996).

¶ 11 We first note that *Darush* was reversed and remanded subsequent to the suppression court's decision. *See Commonwealth v. Darush*, 567 Pa. 458, 787 A.2d 420 (2002).[3] In *Darush*, a consenting undercover law enforcement officer placed and recorded a telephone call to Darush at his home. Darush asked the agent to call him at his shop approximately twenty minutes later and provided the agent with that number. The agent complied and recorded the second conversation. The suppression court excluded both taped conversations on the grounds that "under current caselaw, absent prior judicial approval, Darush's rights as against unreasonable searches and seizures were violated by the taping of his conversation *in his home*, regardless of the agent's consent to the recording." *Darush, supra*, at 724 (emphasis added). This Court agreed and affirmed the decision in the published opinion relied upon by the suppression court in the instant case, 740 A.2d 722.

On appeal, our Supreme Court reversed and remanded Darush for reconsideration in light of *Commonwealth v. Rekasie*, 566 Pa. 85, 778 A.2d 624 (2001)[4]. On remand, this Court, applying *Rekasie*, reversed the suppression order and remanded Darush's case to the trial court.

¶ 12 *Commonwealth v. Myers*, 450 Pa.Super. 482, 676 A.2d 662 (1996), *appeal denied*, 562 Pa. 668, 753 A.2d 816 (2000), also involved the admissibility of a taped recording of inculpatory statements made to an informant. In *Myers*, the conversation occurred while Myers sat on a couch inside of his rural home and the informant stood just outside the door on the porch. Myers' motion to suppress the tape was unsuccessful. On appeal, Myers argued that the trial court erred in refusing to suppress the tape since the Commonwealth had violated the Wiretapping and Electronic Surveillance Control Act (the "Wiretap Act"), 18 Pa.C.S.A. § 5704(2)(ii), by failing to obtain an order based on probable cause from a Superior Court judge authorizing the recording, as required by *Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287 (1995). The Commonwealth countered that Myers' statements to the informant were not "oral communications" as defined in 18 Pa. C.S.A. § 5702,[5] and therefore not within

with respect to a visual search conducted by police officers in a low-flying helicopter. Although the evidence was ultimately suppressed, our Supreme Court concluded that the greater privacy protection often afforded to the curtilage "is not absolute." *Oglialoro*, 579 A.2d at 1292.

**3.** In his brief, Bender cites to *Darush* as "reversed on other grounds." Appellee's Brief at 11. *Darush* was, in fact, reversed on only one ground: the constitutionality of the seizure of Darush's telephonic conversations with an undercover, consenting informant. The suppression court relied only upon this Court's opinion in *Darush*, which was reversed.

**4.** In *Rekasie*, our Supreme Court found no objectively reasonable expectation of privacy in a telephonic conversation between an individual and a confidential informant. *Rekasie*, 778 A.2d at 632. The Court limited its holding to "telephonic communication in the context of consensual wire interceptions," *Id.* at fn. 11, which it determined to be "[q]ualitatively different than a face-to-face interchange occurring *solely within the home*." *Id.* at 632 (emphasis added).

**5.** An "oral communication" is defined as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception

the purview of the Wiretap Act. This Court rejected the Commonwealth's argument, finding that Myers had a justified expectation of non-interception of his conversation and, therefore, the Wiretap Act was applicable. *Myers,* 676 A.2d at 665. Since the Wiretap Act and the *Brion* requirements were not satisfied, suppression was mandated.

¶ 13 While *Darush* and *Myers* are arguably instructive in the resolution of Bender's case, neither case is controlling. *Darush* recognized the sanctity of the home, however its application is necessarily limited by *Rekasie* to telephonic conversations. *Myers* stands for the proposition, consistent with *Brion,* that a person conversing in his home with another individual has a reasonable expectation of non-interception such that the conversation is an "oral communication" subject to the strictures of the Wiretap Act. *Myers* recognized that the Wiretap Act distinguished between the expectation of privacy and the expectation of non-interception. *Myers,* 676 A.2d at 664. Quoting our *en banc* opinion in *Commonwealth v. McIvor,* 448 Pa.Super. 98, 670 A.2d 697, 701 (1996) (en banc), the Court in *Myers* reiterated that

> in Pennsylvania, our Legislature has determined that that [sic] although intercepting a communication to which one is a party may not be a violation of a constitutional privacy interest, it so threatens the private nature of social communication as to be considered unlawful in this Commonwealth. Recognizing this concern of the legislature, any analysis of what constitutes an oral communication under the Wiretap Act cannot be limited to an analysis on strict constitutional privacy grounds. The interest protected by the Wiretap Act is directed to a right not to have one's words electronically seized under circumstances which are reasonably justified.

\*　　\*　　\*　　\*　　\*　　\*

In *Brion,* the Supreme Court did not rule that there must be an expectation of privacy in the recorded communication in order to bring it under the definition of "oral communication" as used by the Wiretap Act. The court merely indicated that an expectation of privacy is an important consideration in the total analysis and is crucial when the interception occurs in one's home.

> [I]n varying situations this analysis can yield differing results as to whether there is either an expectation of privacy or a [sic] expectation of non-interception. Generally, where there is an expectation of privacy there is also an expectation of non-interception. Such is not always the case, however. For instance, if one is being examined by his or her physician and knows from past experience that the doctor often carries a small tape recorder in a pocket to record patient interviews, one's expectation of non-interception is nearly non-existent, but the expectation of privacy is still extremely high. On the other hand, if one is speaking with the town gossip at a public swimming pool under circumstances insuring that the gossip is not wearing a body wire, one's expectation of non-interception is very high, but the expectation of privacy is very low. Thus, an expectation of privacy does not always carry a concomitant expectation of non-interception, and vice versa. For purposes of violation of the Wiretap Act, while we consider the expectation of privacy as a factor, it cannot be the determining factor in our analysis.

*Myers,* 676 A.2d at 664–665.

¶ 14 This case is distinguishable from *Myers* in that the defendant was never

under circumstances justifying such expecta-　　tion."

intercepted in his home. *Brion* (and *Schaeffer* and *Myers*) involved interceptions of entire conversations where the defendant was in his home. *See Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287, 287 (1994) ("[T]he Pennsylvania Constitution precludes the police from sending a confidential informer into the home of an individual to electronically record his conversations and transmit them back to the police."); *Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354, 368 (1987), *affirmed*, 539 Pa. 272, 652 A.2d 294 (1994) (Pennsylvania Constitution recognizes "as reasonable and legitimate the ordinary expectation of the individual that his words are not being electronically recorded and transmitted beyond the four walls of his home...".).

¶ 15 Nor is Bender challenging the legality of the seizure under the Wiretap Act, as was the defendant in *Myers*. The issue before us, as we view it and as it is framed by both of the parties, is whether the warrantless one-party consensual interception conducted by the police violated Bender's reasonable expectation of privacy under Article 1, Section 8 of the Pennsylvania Constitution. To resolve this issue, we must look at the seminal case of *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), *affirmed on other grounds*, *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and its progeny.

¶ 16 In *Blystone*, a consenting informant recorded a conversation with Blystone while the two men were riding in Blystone's truck. The *Blystone* court upheld the admission of the recording into evidence based upon a line of United States Supreme Court cases holding that such one-party consensual interceptions do not violate the Fourth Amendment. *See, e.g.*, *U.S. v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), *rehearing denied*,

402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971) (plurality opinion); *U.S. v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). The *Blystone* Court recognized the broader protection extended under Article 1, Section 8 of the Pennsylvania Constitution "to those zones where one has a reasonable expectation of privacy." *Blystone*, 549 A.2d at 87. But, turning again to federal precedent, the Court held that

[t]o determine whether one's activities fall within the right of privacy, we must examine: first, whether appellant has exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable.... The United States Supreme Court has held that a person cannot have a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal that conversation to the police.

*Id.* at 87 (citations omitted). In holding that the one-party consensual interception at issue in *Blystone* did not violate the Pennsylvania Constitution, Justice McDermott, writing for the majority, eloquently set forth our Supreme Court's rationale:

A thing remains secret until it is told to other ears, after which one cannot command its keeping. What was private is now on other lips and can no longer belong to the teller. What one chooses to do with another's secrets may differ from the expectation of the teller, but it is no longer his secret. How, when, and to whom the confidant discloses the confidence is his choosing. He may whisper it, write it, or in modern times immediately broadcast it as he hears it.

*Blystone*, 549 A.2d at 87–88.

¶ 17 Justice McDermott's words were echoed in *Commonwealth v. Henlen*, 522 Pa. 514, 564 A.2d 905 (1989), where Henlen, a prison guard at a county jail, was

suspected of stealing the personal property of an inmate. During an interrogation by state police at Henlen's work site, Henlen secretly recorded the conversation with the intent of using it as evidence in a harassment claim he would later file against the police. Henlen's argument was similar to that of the Commonwealth in *Myers:* the conversation was not an "oral communication" protected under the Wiretap Act since the trooper had no reasonable expectation of privacy while he was acting in his official capacity during the interrogation of a suspect. Our Supreme Court agreed, noting that *Blystone,* while factually different from *Henlen,* was nevertheless instructive in determining what facts lead to a conclusion that no reasonable expectation of privacy exists in a particular situation: "the broad principles of *Blystone* relating to the expectation of privacy in a conversation are applicable in determining whether circumstances support a conversant's expectation that his or her conversation would not be intercepted." *Henlen,* 564 A.2d at 907. *Myers,* as quoted above, yields the same result.

¶ 18 In *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1995), our Supreme Court carved out a narrow exception to *Blystone.* In *Brion,* the police sent a confidential informant to Brion's home to purchase marijuana. The informant consented to wear a wire and, once inside Brion's home, recorded the incriminating conversation with Brion. No prior judicial approval had been obtained for the use of the body wire in the defendant's home. Brion's motion to suppress the tape recording was denied and he was convicted. Our Supreme Court, guided by *Blystone* and *Henlen,* noted that "the Act requires that a person uttering an oral communication, as that term is defined under the Act, must have a specific expectation that the contents of a discussion will not be electronically recorded. However, this expec-

tation must be justifiable under the circumstances. Implicit in any discussion of an expectation that a communication will not be recorded, is a discussion of the right to privacy." *Brion,* 652 A.2d at 288.

¶ 19 The *Brion* court held that Brion's motion to suppress the tape recording should have been granted since his "case involve[d] conversations taking place in the sanctity of one's home." *Id.* at 289. For the first time the inquiry focused on the location of the conversation rather than the words spoken. It is important to note, however, the language the *Brion* court used to carve out its narrow exception to *Blystone:*

> If nowhere else, an individual must feel secure in his ability to hold a private conversation *within the four walls of his home.* For the right to privacy to mean anything, it must guarantee privacy to an individual *in his own home.* As then-justice Roberts stated in *Commonwealth v. Shaw,* 476 Pa. 543, 550, 383 A.2d 496, 499 (1978): "*Upon closing the door of one's home to the outside world,* a person may legitimately expect the highest degree of privacy known to our society."

*Brion,* 652 A.2d at 289 (emphasis added).

¶ 20 Finally, Section 5704(2)(iv) of the Wiretap Act, adopted in response to *Brion,* contemplates an interception in the "home of a nonconsenting party." The Wiretap Act defines "home" as "[t]he *residence* of a nonconsenting party to an interception, provided that access to the *residence* is not generally permitted to members of the public and the party has a reasonable expectation of privacy in the *residence* under the circumstances." 18 Pa.C.S.A. § 5702 (emphasis added). This language reflects the same narrower conception of one's home as the four walls of a residence, within which one has a reasonable expecta-

tion of privacy, to the exclusion of members of the public.

■ ¶ 21 Returning to Bender's case, we are simply not faced with an interception inside of his home. Rather, the interception began at some location outside the four walls of the Bender residence and then continued exclusively within Lint's vehicle. At no time did Lint engage in conversation with Bender while Bender was in his home. *Compare Myers,* 676 A.2d at 663 (entire conversation was recorded by informant while defendant sat on a couch inside of his home). We decline to follow the suppression court's extension of *Brion* to cover the circumstances of this case. There is nothing in the record to support Bender's expectation of privacy in the Lint vehicle or to justify his expectation that the words he spoke to Lint would not be intercepted. *See Blystone,* 549 A.2d at 81 (finding that defendant has no expectation of privacy during conversation in informant's truck). Consequently, the tape recording should have been admitted into evidence in its entirety. *See also Commonwealth v. Rodriguez,* 519 Pa. 415, 548 A.2d 1211, 1213 (1988) (citing *Blystone* for the proposition that Section 5704(2)(ii) of the Wiretap Act, authorizing one-party consensual interceptions, does not offend Article I, § 8 of the Pennsylvania Constitution).[6]

¶ 22 The order of the suppression court is reversed and the case remanded for further proceedings. Jurisdiction relinquished.

6. In *Brion,* 652 A.2d at 289 fn. 2, our Supreme Court noted that in *Rodriguez* it was unclear whether Rodriguez owned the residence where the intercepted conversations occurred.