J-S50014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| VITALIJ KUPRIJ | |
| | No. 2100 MDA 2015 |

Appeal from the Order Entered November 2, 2015
in the Court of Common Pleas of Berks County Criminal Division
at No(s): CP-06-CR-0003110-2015

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 21, 2016**

The Commonwealth appeals from the order entered in the Berks County Court of Common Pleas granting Appellee Vitalij Kuprij's motion for suppression of evidence and motion for writ of *habeas corpus*. The Commonwealth contends that Appellee's erratic driving created reasonable suspicion and/or probable cause to believe that he might be driving while under the influence. We affirm.

We glean the facts from the omnibus pretrial hearing. Trooper Thomas Moran testified for the Commonwealth. R.R. at 27a.[1] On March 22,

---

[*] Former Justice specially assigned to the Superior Court.

[1] For the parties' convenience, we refer to the reproduced record where applicable.

J-S50014-16

2015, at approximately 2:28 a.m., he was patrolling State Route 12 in Berks County. *Id.*

> [The Commonwealth]: And did you notice anything that brings you to court today?
>
> A: I observed a silver-colored Celica traveling westbound in front of me weaving in the lane of travel.
>
> Q: When you say weaving - - -
>
> A:  It was traveling in the right lane.  It was moving from right to left.  It caught my eye.  As I continued to follow the vehicle, the driver's side tires crossed over to the left over the broken center line.  And as we continued to travel further west past the exit for 183, the passenger side tires crossed over and touched the white fog line.  And as we continued onto 222 South and it's 422 west, he was in the center lane, and the vehicle moved from the—drifted to the left.  The driver's side tires crossed over into the left lane.  And as it crossed over, it straddled the line.  That is when he activated his turn signal.  **That is when I decided I had enough probable cause from the turn signal violation to initiate a traffic stop.**
>
> Q: Now, the vehicle you were driving in that evening, is it equipped  with a camera?[2]
>
> A: Yes, ma'am.
>
> Q: And was the camera on and operable on that evening?

---

[2] A video recording from the camera was attached to Appellant's brief.  *See* Commonwealth's Brief at App. C.  We note that it was not in the certified record on appeal.   "While this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it." *Commonwealth v. Barnett*, 121 A.3d 534, 545 n.3 (Pa. Super.) (citation omitted), *appeal denied*, 128 A.3d 1204 (Pa. 2015).  Appellee does not dispute its accuracy.  *See* Appellee's Brief at 10.  Therefore, we viewed the recording.  *See Barnett*, 121 A.3d at 545 n.3.

- 2 -

A: Yes, ma'am.  There was an issue in the beginning of the video.  You will see where the camera came off the mount off the windshield, and you will see in the beginning I'm putting it back on the window, back up on the windshield.

Q: Does it remain on your windshield the entire time?

A: When I put it in park for the traffic stop, it came off again.  And at that point, because of officer's safety, there were two people in the vehicle that I could see, I just left it hanging where it was.

Q: But does the camera capture the driver, which you had observed?

A: Yes, ma'am.

Q: And did you provide a copy of that camera—footage to the Commonwealth?

A: Yes, ma'am.

\* \* \*

Q: Do you have any experience with the detection of impaired drivers?

A: Yes, ma'am.

Q: **And when you observed the driving, you said there was also a turn signal violation**?

A: Yes, ma'am.  When he moved from the center lane to the left lane, he already started his movement.  **He already started a lane change when he tuned his left turn signal on for a brief moment, but he was already changing lanes, which is a violation of the Pennsylvania Vehicle Code**.

*Id.* at 27a-28a (emphases added).

Counsel for Appellant cross-examined Trooper Moran.  *Id.* at 28a.

- 3 -

[Defense Counsel]: Trooper Moran, would you agree with me that **the video that's been presented to the Judge is the entirety of what you're relying on your justification to stop this vehicle**?

A: **Yes**.

* * *

Q: . . . The turn that you're talking about the—**this is a lane change you're talking about**?

A: **Yes**.

Q: The vehicle never turned off Route 12 when you were following it?

A: No.

Q: So we're talking about a lane change?

A: Route 12 goes straight into 222. It turns into 222 southbound, 422 westbound.

Q: The vehicle you were following never exited the roadway when you were following it?

A: No.

* * *

Q: You would agree with me, would you not, that the video segment you're talking about when you are saying a bad lane turn takes place over two—approximately two seconds where the vehicle moves briefly in the direction it's changing and puts their turn signal on?

A: Yes.

* * *

Q: Trooper, you indicated you were on some kind of routine patrol that night. Isn't it a fact that you were on a special detail looking for DUI's, a DUI detail, weren't you?

A: Yes.

Q: And you would agree with me once the video falls off the mount shortly before the traffic stop that you did not observe any conduct that brings us here as the basis for your traffic stop, is that true?

A: After?

Q: After the video fell down?

A: No.

Q: So we can't—we can't assume there is anything else that you saw?

A: As far as why I made the traffic stop?

Q: Yes.

A: No.

*Id.* at 28a-29a.

Appellee was charged with driving under the influence ("DUI"), general impairment incapable of driving safely,[3] DUI, highest rate of alcohol,[4] disregard traffic lane,[5] turning movements and required signals,[6] and careless driving.[7] Appellee filed an omnibus pretrial motion to suppress. Following a hearing, the motion was granted. The Commonwealth filed a

---

[3] 75 Pa.C.S. § 3802(a)(1).

[4] 75 Pa.C.S. § 3802(c).

[5] 75 Pa.C.S. § 3309(1).

[6] 75 Pa.C.S. § 3334(a).

[7] 75 Pa.C.S. § 3714(a).

notice of appeal to this Court, certifying that the ruling terminated or substantially handicapped the prosecution of this case.[8] The Commonwealth filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.[9]

The Commonwealth raises the following issues for our review:

> A. Did Trooper Moran have reasonable suspicion and/or probable cause to believe that [Appellee] violated two separate provisions of the motor vehicle code?
>
> B. Did the trial court err in granting the request for a writ of *habeas corpus* without permitting the Commonwealth to appeal from the adverse suppression ruling?

Commonwealth's Brief at 4.

The Commonwealth contends that

---

[8] In ***Commonwealth v. Bender***, 811 A.2d 1016 (Pa. Super. 2002), this Court noted

> that the Commonwealth has an absolute right of appeal to the Superior Court to test the validity of a pre-trial suppression order. Such an appeal is proper as an appeal from a final order when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution.

***Id.*** at 1018 (quotation marks and citations omitted). Instantly, the Commonwealth has complied with this procedural requirement, and therefore the appeal is properly before us. ***See id.***

[9] We note that Appellee sent this Court a post submission communication containing a copy of ***Commonwealth v. Slattery***, ___ A.3d ___, 2016 WL 2848689 (Pa. Super. May 13, 2016). The Commonwealth objected, in a post submission communication, contending that the copy of the opinion constituted additional argument. We find no merit to this claim.

[b]ased upon this record, Trooper Moran had the requisite reasonable suspicion and/or probable cause to conduct the traffic stop. Primarily, Trooper Moran was on a roving DUI patrol when he noticed the Celica that [Appellee] was [sic] weaving within its lane. The vehicle then traveled over the center line, over the fog line, and again over the center line before the traffic stop was initiated. While this might not rise to the level of probable cause to believe that [Appellee] violated 75 Pa.C.S.A. § 3309(1),[10] . . . this erratic driving does create sufficient reasonable suspicion to believe that [Appellee] might be driving while under the influence. Thus[,] Trooper Moran possessed the requisite reasonable suspicion to conduct a further investigation for driving while under the influence of alcohol or a controlled substance.

In addition, Trooper Moran had the requisite probable cause to stop the Celica for the lane change violation. By its plain language, 75 Pa.C.S.A. §3334(a) and (b) require a vehicle to signal its intention to change lanes at least 100 feet *before* actually changing lanes. However, Trooper Moran clearly saw [Appellee] in the Celica activate its turn signal *after* it started changing lanes by moving to the left and straddling the dashed white line, contrary to the requirements of the statute.

Commonwealth's Brief at 11-12 (footnote and some citations omitted).

---

[10] Section 3309(1) provides:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1) Driving within single lane.**—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1).

Our review is governed by the following principles:

> When reviewing an Order granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

***Commonwealth v. Gutierrez***, 36 A.3d 1104, 1107 (Pa. Super. 2012)

(citation omitted).

The Motor Vehicle Code provides:

> **(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver''s license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). Sections 3334(a) and (b) of the motor vehicle code provide:

> **(a) General rule.**—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

**(b) Signals on turning and starting.**—At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour.

75 Pa.C.S. § 3334(a), (b).

In **Slattery**, this Court opined:

> Instantly, we agree with both [the defendant] and the trial judge that [the trooper] did not have probable cause to stop the Durango on the basis that he believed [the defendant] had violated section 3334 of the vehicle code. Here, the trooper testified that he stopped [the defendant's] Durango because he did not signal at least 100 feet prior to changing lanes. . . . While section 3334(a) provides that a person shall not move from a traffic lane to another or turn a vehicle without appropriately signaling of his or her attention to turn, if the given vehicle is travelling less than 35 m.p.h., the driver shall appropriately signal "continuously during not less than the last 100 feet traveled by the vehicle before *turning.*" 75 Pa.C.S. § 3334(b). Accordingly, **the words of the statute are clear that the 100–foot rule applies to a vehicle *turning*, it is silent regarding the length that a signal must be activated prior to changing lanes**. Moreover, the language found throughout the remaining subsections of 3334 is consistent with the interpretation that **the term "before turning" means before a vehicle makes a turn onto another roadway, not before a person changes lanes**. *See id.* at § 3334(a) ("Upon a roadway no person shall *turn a vehicle or move from one traffic lane to another* . . . unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section."); *id.* at § 3334(d) ("Turn signals shall be discontinued immediately after *completing the turn or movement from one traffic lane to another traffic lane.*"). *See* 1 Pa.C.S.A. § 1921(b) (when terms of statute are clear and unambiguous, they are given effect consistent with plain and common meaning).

*Slattery*, \_\_\_ A.3d at \_\_\_, 2016 WL 2848689 at \*2 (some emphases added).

Instantly, the trial court opined:

> In review of the video evidence, [Appellee] did not do anything to give Trooper Moran probable cause for a vehicle stop. [Appellee] was not speeding, weaving, or braking erratically. [Appellee] actually used his turn signal indicators every time he changed lanes. . . . [Appellee] posed no safety hazard when his vehicle simply touched the white fog line. Therefore, at the time of the stop, Trooper Moran lacked specific articulable facts which would have provided reasonable suspicion to believe that [Appellee] was in violation of § 3309(1). Based on the totality of the circumstances, the [c]ourt finds that the Commonwealth has not met its burden in establishing sufficient reasonable suspicion for the vehicle stop.

Trial Ct. Op., 12/2/15, at 6.[11] We agree no relief is due.

In the case *sub judice*, Trooper Moran did not have reasonable suspicion and/or probable cause from the turn signal violation to initiate a traffic stop. *See Slattery*, \_\_\_ A.3d at \_\_\_, 2016 WL 2848689 at \*2. The statute is silent as to the length of time that a signal must be activated prior to changing lanes. *See id.* We find no abuse of discretion or error of law by the trial court. *See Gutierrez*, 36 A.3d at 1107. Accordingly, we affirm the order of the trial court granting Appellee's motion to suppress.[12]

---

[11] We note that our review of the video corroborates the facts set forth by the trial court.

[12] Given our resolution of this issue, we need not address the second issue raised on appeal.

Order affirmed.

Judge Stabile joins the Memorandum.

Judge Mundy notes her dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016