J-S59040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

Appellant

v.

LAMAR BATCHLER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2200 EDA 2015

Appeal from the Order June 25, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0002120-2015

BEFORE: BENDER, P.J.E., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 06, 2016**

The Commonwealth appeals from the order entered in the Philadelphia County Court of Common Pleas granting Appellee Lamar Batchler's motion for suppression of evidence. The Commonwealth contends that the officers had reasonable suspicion to conduct a protective frisk of Appellee. We affirm.

We adopt the facts and procedural history set forth in the trial court's opinion. **See** Trial Ct. Op., 12/2/15, at 1-3. Appellee was charged with possession of a firearm prohibited,[1] firearms not to be carried without a license,[2] and carrying firearms on public streets in Philadelphia.[3] Appellee

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105.

[2] 18 Pa.C.S. § 6106.

filed an omnibus pretrial motion to suppress. Following a hearing, the motion was granted. The Commonwealth filed a notice of appeal, certifying that the ruling terminated or substantially handicapped the prosecution of this case.[4] The Commonwealth filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the trial court filed a responsive opinion.

The Commonwealth raises the following issue for our review:

> Did the suppression court err in ruling that experienced officers lacked reasonable suspicion to conduct a protective frisk where, upon stopping a car in a high crime, high drug area at night for a vehicle code violation, they saw [Appellee], the front seat passenger, act nervous and slump to his left as if to conceal a weapon in his left waistband?

Commonwealth's Brief at 1.

The Commonwealth contends that

---

[3] 18 Pa.C.S. § 6108.

[4] In **Commonwealth v. Bender**, 811 A.2d 1016 (Pa. Super. 2002), this Court noted

> that the Commonwealth has an absolute right of appeal to the Superior Court to test the validity of a pre-trial suppression order. Such an appeal is proper as an appeal from a final order when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution.

**Id.** at 1018 (quotation marks and citations omitted); see also Pa.R.A.P. 311(d). Instantly, the Commonwealth has complied with this procedural requirement, and therefore, the appeal is properly before us. **See id.**

[Appellee's] bizarre "Superman type" gesture, and appearing "very nervous, very scared" at Officer [Daniel] Sweeney's first approach; the inability of his companion to produce any proof of registration or insurance for the SUV, which the officers stopped at night in a high-crime area; and [Appellee's] "sitting awkwardly" slumped to his left with both arms resting on the center console as if concealing something on his left side upon the officer's second approach were all danger signals to which the officers responded with appropriate caution as authorized by the Constitution. Yet, the suppression court found that [Appellee] gave the seventeen-year veteran police officer no reasonable basis to fear he might be armed. This ruling was incorrect.

Commonwealth's Brief at 9-10.

Our review is governed by the following principles:

When reviewing an Order granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

**Commonwealth v. Gutierrez**, 36 A.3d 1104, 1107 (Pa. Super. 2012)

(citation omitted).

After careful review of the record, the parties' briefs, and the decision by the Honorable Daniel J. Anders, we affirm on the basis of the trial court's

opinion.[5]    **See** Trial Ct. Op. at 3-6 (holding (1) there were insufficient specific and articulable facts for Officer Sweeney to have reasonably believed Appellee was armed and dangerous; and (2) there was insufficient evidence to support the **Terry**[6] frisk of Appellee).  Accordingly, we affirm the order of the trial court granting Appellee's motion to suppress.

Order affirmed.

P.J.E. Bender joins the Memorandum.

Judge Olson files a Dissenting Memorandum.

---

[5] We note that the citation referring to **Commonwealth v. Clinton** is the citation for **Commonwealth v. Gray**.  **See** Trial Ct. Op. at 5.

[6] **Terry v. Ohio**, 392 U.S. 1 (1968).

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2016

CP-51-CR-0002120-2015 Comm. v. Batchler, Lamar
Opinion

IN THE COURT OF COMMON PLEAS OF PHILADEL
FIRST JUDICIAL DISTRICT OF PENNSYL\
TRIAL DIVISION – CRIMINAL



7376945531

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0002120-2015

VS. : 2200 EDA 2015 FILED

LAMAR BATCHLER : DEC 2 2015

Criminal Appeals Unit
First Judicial District of PA

OPINION

Following a suppression hearing, the trial court granted Defendant Lamar Batchler's

motion to suppress a firearm recovered from his person. The Commonwealth filed a timely

appeal in which it argues that the trial court erred in granting Defendant's motion to suppress

because the police officer had a reasonable suspicion that Defendant was armed and dangerous.

For the reasons stated below, the Superior Court should affirm the trial court's decision to grant

Defendant's motion to suppress.

FACTUAL BACKGROUND

On February 10, 2015, at approximately 9:35pm, Police Officer Daniel Sweeney was on

routine patrol when he observed a red Ford Expedition on the 3600 block of North Broad Street.

After inputting the vehicle license plate number into the database of Bureau of Motor Vehicles,

Officer Sweeney determined that the vehicle was unregistered. Based upon this information,

Officer Sweeney stopped the vehicle. N.T. 07/25/2015 at 6-7.

After stopping the vehicle, Officer Sweeney approached the passenger side of the vehicle,

where Defendant was seated. As Officer Sweeney approached the vehicle, Defendant had his

arms extended and was looking straight ahead, as in a superman-type motion. *Id.* at 8-9, 12.

Officer Sweeney testified:

> As I approached, the defendant had his arms extended looking
> straight ahead and I asked him if he had something on him because

> it made me a little suspicious. He appeared very nervous, very scared and said he didn't have anything on him. I told him I appreciate you showing me your hands but you can just relax and put them on your thighs and everything will be okay.

*Id.* at 9. Officer Sweeney asked Defendant for identification. Defendant retrieved his identification from his back pocket and provided it to the officer. After receiving the identification, Officer Sweeney returned to his police vehicle. While inside the police vehicle, Officer Sweeney realized that he had not received registration or insurance for the vehicle or for the driver of the vehicle. Officer Sweeney approached the vehicle again. *Id.* at 10.

During the second approach, Officer Sweeney noticed Defendant was "sitting awkwardly like as if he was concealing something from either my vantage point or my partner's vantage point." *Id.* at 11. Defendant was sitting back in his chair and leaning over to the left side with his hands crossed on the armrest. Officer Sweeney asked Defendant to step out of the vehicle and then searched him by conducting a pat down. During the pat down, Officer Sweeney discovered a firearm on the left side of Defendant's waist. Officer Sweeney searched the waist area because he believed Defendant was hiding something in his waistband and that "he possibly had some type of weapon on him." Based upon Defendant's initial "superman-type motion" and then leaning to the left side of the vehicle, Officer Sweeney testified that, "I knew something wasn't right" so he "had more than enough reason to pull [Defendant] out of the vehicle to pat him down to see if he had a weapon on him." *Id.* at 13-14.

On cross-examination Officer Sweeney conceded that:

- Defendant was cooperative and complied with all of Officer Sweeney's commands and orders during the entire stop. *Id.* at 21-22.

- Defendant's identification was valid and that Defendant had no outstanding warrants. *Id.* at 23.

- Defendant did not make any attempt to flee or escape at any point during the stop. *Id.* at 24.

-2-

- Officer Sweeney never observed "any movement inside the car that looked suspicious." *Id.* at 24.

- Officer Sweeney never observed a bulge or firearm on Defendant at any time during the stop, including when Defendant was seated inside the vehicle and when he exited the vehicle. *Id.* at 24-25.

Officer Sweeney had 17 years of experience with the Philadelphia Police Department and approximately one year of experience in the 39th district. Based upon his experience, Officer Sweeney regarded the area of Broad and Erie as a high narcotic, high crime area. He has made several arrests for firearms in that area and, in the majority of those arrests, recovered the firearm from the front of the waistband. *Id.* at 15-18.

## DISCUSSION

On appeal, the Commonwealth argues that the trial court erred in granting the motion to suppress because Officer Sweeney had a reasonable suspicion that Defendant was armed and dangerous, which permitted him to frisk Defendant for weapons. In reviewing suppression orders, appellate courts apply the following standard of review:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Byrd*, 987 A.2d 786, 790 (Pa. Super. Ct. 2009).

A *Terry* frisk is a police search that is strictly limited to "that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Commonwealth v. E.M*, 735 A.2d 654, 659 (Pa. 1999) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). A police officer may conduct a *Terry* frisk to ensure his safety if the officer reasonably believes—based on

specific and articulable facts—that the person may be armed and dangerous. *Commonwealth v. Grahame*, 7 A.3d 810, 814 (Pa. 2010). In determining whether a sufficient articulable basis exists to support a *Terry* search, courts examine the totality of the circumstances of the facts of record developed during the hearing on the motion to suppress. *Id.* Moreover, "it is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected" that the defendant was armed and dangerous. *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011).

"When assessing the reasonableness of an officer's decision to frisk a suspect during an investigative detention," courts do not consider an officer's "unparticularized suspicion or 'hunch,' but rather…the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Commonwealth v. Stevenson*, 894 A.2d 759, 771 (Pa. Super. Ct. 2006) (quoting *Commonwealth v. Zahir*, 751 A.2d 1153, 1158 (Pa. 2000)). The Pennsylvania Supreme Court has recognized that "an individual's location, standing alone, does not provide sufficient grounds for a *Terry* search." *Grahame*, 7 A.3d at 816 (noting that even high crime areas require an individualized, reasonable suspicion that a suspect is armed and dangerous). Even a suspect's nervous behavior is not sufficient by itself. *Commonwealth v. Gray*, 896 A.2d 601, 607 (Pa. Super. Ct. 2006); *but see Commonwealth v. Rogers*, 849 A.2d 1185 (Pa. 2004) (extreme nervousness combined with other factors can be sufficient).

1.      There Are Insufficient Specific And Articulable Facts To Support
        A Reasonable Belief That Defendant Was Armed And Dangerous

Here, there are insufficient specific and articulable facts to support the *Terry* frisk of Defendant. First, there is no evidence that Officer Sweeney observed anything resembling a firearm or a weapon on Defendant or even in the vehicle. In fact, there was no evidence that he observed a bulge or unknown object anywhere on Defendant. Second, there is no evidence that

-4-

Defendant failed to comply with any order by Officer Sweeney. To the contrary, Officer Sweeney testified that Defendant complied with every command and order that he gave to Defendant. Third, Officer Sweeney testified that he never observed "any movement inside the car that looked *suspicious*." Fourth, Defendant's "superman pose" cannot be objectively regarded as a furtive movement. Indeed, officers often order individuals to show their hands or to put their hands up when conducting a traffic stop. Thus, the pose that Defendant took by extending his arms is exactly what you would expect a person to do in anticipation of being asked by an officer to show your hands. Fifth, although the vehicle was located in an area that Officer Sweeney regarded as a high crime area, the vehicle was stopped for a motor vehicle violation and not anything related to the use or possession of a firearm. At most, Defendant was nervous during the traffic stop; his nervousness resulted in Defendant being found in two, perhaps unnatural, seating positions: the Superman pose and then leaning up against the armrest.

In sum, there are insufficient specific and articulable facts for Officer Sweeney to have objectively and reasonably believed that Defendant was armed and dangerous. Instead, Officer Sweeney had an unparticularized suspicion or hunch that Defendant may have been armed based upon the unnatural position that he was sitting, which was likely the result of the nervousness that typically is experienced when being stopped by a police officer. This evidence is insufficient to conduct a *Terry* frisk of Defendant. *See, e.g., Gray*, 896 A.26 at 607; *Commonwealth v. Cooper*, 994 A.2d 589 (Pa. Super. Ct. 2010) (reversing trial court's denial of motion to suppress where there was insufficient evidence to support the frisk of the defendant for weapons); *Commonwealth v. Clinton*, 896 A.2d 601 (Pa. Super. Ct. 2006) (same); *Commonwealth v. Carter*, 779 A.2d 591 (Pa. Super. Ct. 2001) (same).

-5-

## CONCLUSION

Based on the foregoing, the order granting the motion to suppress should be affirmed.

BY THE COURT:

_____
DANIEL J. ANDERS, JUDGE
Dated: December 2, 2015

-6-